on your screen, and Judge Andrew Oldman, who is in Austin but should also be on your screen. We appreciate your willingness to participate in oral argument by videoconference, and while it clearly is not our preference, we would much rather have you here in the courthouse in a courtroom in person, times being such as they are, this is an alternative which affords us the opportunity to hear your arguments and affords you the opportunity to address the court in a way that hopefully can at least recapture some of the formality of being at our podium and listening to the questions that are being asked. You'll also notice that we have the timer just as we would in the courtroom, would ask you to be conscious of that. Also, I will tell you at the outset that the panel is completely familiar with the arguments made in your brief and the key cases that you've cited and relied on, so if you tailor your remarks accordingly, that would be appreciated. We'll go ahead and begin. Mr. Walsh, I understand you're going to start with eight minutes, is that correct? Yes, Your Honor. Okay, and then Mr. Campbell is going to take over for the next eight minutes. Yes, Your Honor. Okay, and then we'll get 20 minutes from Ms. Dominey, and then four minutes for rebuttal that Mr. Campbell has reserved, is that correct? Yes, Your Honor. Okay, all right, let's go ahead and begin, Mr. Walsh. Thank you, Your Honor. May it please the court, my name is Colin Walsh, and I, along with my co-counsel Austin Campbell, represent appellants James Robertson and Robertson Technologies. The district court's order compelling arbitration of all claims against all defendants, as well as its decision to deny the motion to amend to add a necessary party, should be reversed in full. During my time, I will discuss the NDAA whistleblower statute's enforcement of arbitration agreements required as a condition of employment, as well as the denial of the motion to amend. Mr. Campbell will address whether or not independent post-employment claims of tortious interference are subject to Robertson's employee arbitration agreement. He will also discuss the claims against Roger Rinegar and the court's decision to dismiss instead of stay this case. This case involves government corruption and bribery in competing for contracts with the Department of Veterans Affairs. When Mr. Robertson refused to engage in such unlawful behavior, he was fired. Now, appellees are trying to silence his voice and hide their unlawful behavior by forcing his claims into secret and confidential arbitration. But the public has a right to know how its tax dollars are being spent, and the NDAA whistleblower statute does not permit such secrecy. The Supreme Court has repeatedly held that a party may not be compelled to arbitration if Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue, or if Congress intend to preclude a waiver of a judicial forum. This is found in the cases relied on by appellees' counsel to force arbitration. I'm talking about the Mitsubishi Motors Corporation case, the Gilmer case, the Shearson American Express, Incorporated case. And so the issue before this court is whether or not Section C7 of the NDAA whistleblower statute shows that Congress intended to preclude waiver of judicial remedies and thus prohibit enforcement of a mandatory arbitration agreement requires no condition. Aren't there also claims asserted that are not part of the whistleblower aspect of the case? Aren't there other disputes between Mr. Robertson and his former employer that also are part of the case? Yes, Your Honor. There are post-employment tortious interference claims, and that's what Mr. Campbell intends to talk about. I can answer very general questions about it if you have it, but I would prefer if Mr. Campbell addressed those issues. Okay. Go ahead. And so the question is whether or not Section C7 shows that Congress intended to And here the answer is clearly yes, based on the structure, terms, and sequencing of the statute. In fact, the NDAA whistleblower statute even uses the same remedies language as the Supreme Court in Mitsubishi and in Gilmer. And so if you look at the remedy section of the NDAA whistleblower statute, this is Section C, you see that in Section C2 it expressly provides for the remedy of a federal jury trial. The fact that a federal jury trial is characterized as a remedy is confirmed by its characterization as a remedy in the regulations under this statute as well. And for what it's worth, appellees implicitly concede that the statute characterizes a federal jury trial as one of the remedies provided for in it. And that characterization is extremely important because in Section C7, the remedies provision then prohibits waiver of any remedies provided for in the statute within the remedy section by any agreement or condition of employment. So applying the simple transitive property to this statute, federal jury trials are characterized as a remedy provided for under the statute. Remedies provided for under the statute cannot be waived by agreement or condition of employment. Therefore, federal jury trials cannot be waived by any agreement or condition of employment. This is the exact same reasoning that Justice Gorsuch used just last year on behalf of the unanimous Supreme Court in New Prime v. Oliveira. And in that case, he cautioned against ignoring the plain statutory text, stating, if courts felt free to pave over bumpy statutory text in the name of more expeditiously advancing a policy goal, we would risk failing to take account of legislative compromises essential to the law's passage, and in that way, thwart rather than honor the effectuation of congressional intent. But that's exactly what appellees, the district court, and the magistrate court have done, and they missed the mark by arguing that the statute must explicitly state or prohibit or preempt arbitration specifically. That has never been the law. As Justice Sotomayor pointed out in her concurrence with Justice Scalia in the CompuCredit case, another case relied on by appellees, in which she said, I do not understand the majority opinion to hold that Congress must speak so explicitly in order to convey its intent to preclude arbitration of Mitsubishi's hold, as Gilmer holds, as the Supreme Court has repeatedly said, all that's required is that Congress itself must invent an intention to preclude waiver of judicial remedies for the statutory rights at issue. And here, that is exactly what Congress has done by defining a remedy as a federal jury trial and then saying any remedies cannot be prohibited by agreement or condition of employment. If you use appellee's argument, it would lead to a statute prohibiting, say, a jury trial waiver, but not prohibiting arbitration. After all, if this statute said no rights or federal jury trials may be waived by agreement or condition of employment, under appellee's reasoning, arbitration would still be permitted to waive the right or remedy of a federal jury trial, even though it's very obvious that Congress intended to prohibit waiver of federal jury trials. The same is true here by defining remedy to include a federal jury trial and then prohibiting waiver of those remedies. Mr. Walsh, can we talk about a case you haven't mentioned, which is 14 Penn Plaza? So in that case, the employee made a virtually identical argument, which was the jury trial was a, quote, right guaranteed by the ADEA. And that statute also included a waiver provision that said, quote, an individual may not waive any right under this chapter, except in such and such circumstances. And so the question was, is the jury trial a right? And it strikes me that that would be a much more textually plausible argument than the idea that the jury trial is a remedy, right? Because juries may provide remedies, they may not, but you can understand how the jury trial is itself a right, which is what they argued in Penn Plaza. And the Supreme Court said, no, that's not how this works at all. The ADEA provides you rights, just like the statute in this case provides you rights. But it's a separate question as to whether those rights were indicated in a judicial forum or an arbitral forum. And so you can't rely on these waiver provisions unless they specifically say, you know, we are concluding arbitration agreements or something. That's what the court said in Ethics Systems. So I'm struggling to how it's any different than this long line of cases that all say, we're not displacing the Arbitration Act unless Congress says we're Well, so actually all of those cases don't say that arbitration has to be explicitly prohibited. And I would say that the ADEA is distinguishable for several reasons. So first and most importantly, Congress expressly encourages arbitration in its notes. If you look at 105 Statute 1081, they expressly state that they don't want to prohibit arbitration for any of the statutes by this public law, which is Public Law 102-166. And one of the things amended was the ADEA. So arbitration is expressly encouraged for that. The other thing I would point out is that the waiver provisions are both extremely different. And the structure of the statutes between the ADEA and the NDAA whistleblower statute are extremely different. So the ADEA states that the rights cannot be waived. And that is not the same as the non-waiver provision in the NDAA statute, which says that rights and remedies cannot be waived. And it's significant that the statute says rights and remedies, and it's significant where the statute says rights and remedies cannot be waived. And it's also significant in the NDAA where federal jury trials pop up in the statute. I'm sorry, Your Honor, and I see that I've run out of time. Let me go ahead and allow Mr. Campbell to address your issues. Okay. Thank you, Mr. Walsh. Mr. Campbell, if you'd like to begin. Thank you, Your Honor. May it please the Court. My name is Austin Campbell on behalf of the appellants. Even putting aside the NDAA, the plain language of the arbitration agreement in this case simply doesn't cover the other claims. So the district court's order requiring arbitration of those claims should be reversed. Now, the arbitration policy here covers any controversy, dispute, or claim between any employee and the company or its officers, agents, or other employees related to employment. Later, the acknowledgment of the arbitration policy also calls them employment-related claims. Based on the party's agreement, Robertson's claims are not arbitrable because they're not claims between an employee and the company related to employment. And that's been the same with both the court precedent and the circuit precedent. In court like EEOC v. Waffle House, where the court held that the court should look first to whether the parties agreed to arbitrate a dispute, not to general policy goals to determine the scope of the agreement. And the circuit in Archer v. White, where this court held that it could not override the clear intent of the parties or reach a result inconsistent with the plain text of a contract simply because the policy favoring arbitration is implicated. And in Archer v. White, for example, the court held that an arbitration agreement by its terms did not cover actions seeking injunctive release. It meant exactly that. Nothing more, nothing less. And it refused to read in or take out any language from that. In fact, in inferring the district court, it sided with approval its language saying that it would not rewrite the terms of the party's agreement to accommodate a party, notably the party that drafted the agreement, that could have negotiated for more precise language. It then went on to enforce the plain language of the agreements. Just as in Archer v. White, here this court should enforce the party's agreement as written within the four corners of the contract, not inferring things that aren't there, taking things out that are there. Specifically, appellants' tortious interference claims are not arbitrable claims between an employee and the company related to employment because the facts behind those claims have nothing to do with Robertson's employment. Specifically, the complaint says that appellees engaged in a campaign to sabotage appellants' post-employment business dealings by, among other things, telling business partners that it's unstable, incompetent, and untrustworthy, and trying to entice Robertson's ex-director of operations to quit. This is unrelated to employment because all of these events happened after Robertson's termination, and indeed, Section H of the complaint doesn't even mention Robertson's employment, Section H being the part that talks about tortious interference, other than to say this happened after his termination. Mr. Kimball, why did the appellants do that to your client? Why they engaged in tortious interference was in response to him opposing illegal activity. While he was employed, that is correct. That said, the actual case law that appellees cite says that the standard for what related to means, related to employment means, is that the factual allegations of the complaints have to create a significant relationship with employment, and that sort of connection is simply incidental. It's a situation where, yes, the parties only knew each other because of employment, but that's not enough to create an actual connection to employment. If that were the case, that would reach an absurd result, where this term, related to employment, means essentially nothing. That, say, 25 years from now, if Mr. Fahami were to hypothetically find Mr. Robertson, recognize him as an Intratec employee, and assault him under appellee's interpretation, that might be related to employment because the only reason they knew each other is because of their employment. But that's absurd. That defies common sense. And just as in that situation here, the only connection is the fact that they knew each other because of this employment. The actual factual allegations have nothing to do with Robertson's employment. Now, Intratec says that it would necessarily have been based, the actions that they took would necessarily have been based upon their experience and the actual factual allegations state, which are that appellees falsely told others that he's unstable and untrustworthy. That has nothing to do with his actual work for Intratec. It's about attacking his character. And appellees, you know, do cite a number of cases to say related to is construed broadly. But again, the cases on that make it clear that that does have limits, that that requires that the factual allegations create a significant relationship. They cite cases appellees do, saying that tortious interference can be related to employment, but it's important to notice that those cases involve very different factual situations in here or very different statutory and rather arbitral language. You know, for example, Hays, which held that a tortious interference claim could be related to employment, involved a situation where the tortious interference was the termination decision and the employment contract was the contract being interfered with. Instin talks about an arbitration clause where the language of the arbitration clause covered claims whether or not they arise out of the employee's employment remuneration or termination, which is obviously far broader than the language here. Cases like Pennzoil and Guggenheim are actually contract cases that involve a number of interrelated contracts that the courts had to look at that all referred to one another to resolve those contract disputes. Whereas here, there's no connection between Robertson's current tortious interference claims and his employment. They all occurred separately. In addition to the tortious interference claims, and I'll address this briefly because I understand Mr. Reniger is not appearing for oral arguments, that the claims against Reniger are also not arbitrable because it's undisputed that Mr. Reniger never signed any sort of arbitration agreement. He was never an employee of Intratec. He never signed any kind of agreement and he even says in his filings that he's not bound to the arbitration. And yet nonetheless, the courts referred all claims against all parties to arbitration. And that goes against Supreme Court aggressive indications such as Waffle House where it goes without saying that a contract cannot bind a non-party. So that decision should also be reversed. Finally, the district courts actually dismiss this matter rather than staying. And that decision is also an error. Fifth Circuit precedent in cases such as Alford state that in the FAA context, a stay is generally mandatory if the matter is referred to arbitration. The only exception being if all the matters in the dispute are arbitrable, in which case the matter can be dismissed because there's nothing for the court to actually decide on merits. But here, even if the court were to reject all of appellant's claims about the NDA, all of the appellant's claims about the arbitration agreement, it still is indisputable. Claims against Reniger are not arbitrable. And so not all claims on this matter are arbitrable. And because of that, dismissal is inappropriate. And indeed, Intratec seems to concede that in their briefing. In sum, the district court's order of compelling arbitration of all claims against all parties is an error. It flies in the face of the plain language of the arbitration agreement in this case. It requires reading things into the agreement that just aren't there, making assumptions that just aren't warranted based upon the actual factual conditions of the case. And the matter should not be referred to arbitration. And in addition, it should never have been dismissed. Thank you. All right. Thank you, Mr. Campbell. Ms. Gemini, we'll go ahead and take up your argument. You have a full 20 minutes. Okay. Thank you, Judge. May it please the court, my name is Heidi Gemini, and I represent the Intratec defendants. I'm going to first address the section 4712 whistleblower claim. My opposing counsel referred to that as section C7, so I don't want to confuse the court. We're talking about the same thing here. The question is, has the Federal Arbitration Act mandate been overridden by a contrary congressional command in section 4712? The answer is no. The Supreme Court has stated that congressional intent to prohibit or restrict arbitration must be clear and explicit. And this is set forth in the CompuCredit case, the Gilmore case, and the other cases we've cited. Specifically, in Gilmore, the Supreme Court held that a waiver provision in a federal statute must, quote, explicitly preclude arbitration, end quote. And in the CompuCredit case, the court held that if a statute is entirely silent as to whether claims under the statute could be resolved by arbitration, then arbitration is not prohibited. The Supreme Court has also held that when Congress has expressed its intent to restrict arbitration of a federal claim, it has done so with clarity. There are three other federal statutes with whistleblower protections where Congress has actually provided an example of clear and explicit intent to restrict arbitration of claims under those statutes. Those statutes are the Sarbanes-Oxley Act amendments, the Commodity Exchange Act regulations, and the Taxpayer First Act. Two of those statutes were amended by the Dodd-Frank Act, the Sarbanes-Oxley Act, and the Commodity Exchange Act in 2010 and 2011, respectively. And then the Taxpayer First Act was enacted after section 4712. But in each of these statutes, they contain whistleblower protections for certain employees and individuals. They also contain virtually identical non-waiver language with only slight variation, similar to the language in our statute, but with a very important distinction. Those statutes quote this following language. The rights and remedies provided for in this section may not be waived by any agreement, policy, form, or condition of employment, comma, including any pre-dispute arbitration agreement. So if that language sounds familiar, it's very similar to the language that was proposed by the Senate in a prior version of the non-waiver provision in section 4712. When you review each of these other three whistleblower statutes, you will see that not only do these statutes contain the same identical non-waiver provision with that phrase, including any pre-dispute arbitration agreement, so expressly prohibiting pre-dispute arbitration agreements, but these very same statutes also contain an additional provision that's virtually identical in each of the three statutes that states, quote, no pre-dispute arbitration agreement shall be valid or enforceable, comma, if the agreement requires arbitration of the dispute arising under the statute. And I would note that two of those statutes, the Sarbanes-Oxley Act and the Taxpayer First Act also contain a statement granting the trial. So they're very similar to the whistleblower protections in our section 4712. But in these other statutes, they're radically distinct in that Congress made it clear, explicit, and unmistakable that a pre-dispute arbitration agreement was prohibited under those statutes if the agreement required the claimant to arbitrate a claim arising under the statute. In contrast, in section 4712, not only did Congress remove that language during the legislative, you know, when it was negotiating and deciding the language that would be included in the final bill, it removed the language including any pre-dispute arbitration agreement from the non-waiver provision, but that same section does not contain any specific explicit statements, such as the ones contained in the other whistleblower statutes, that no pre-dispute arbitration agreement shall be valid or enforceable. So at the least here, looking at the other three statutes and analyzing this claim in the context of the CompuCredit case and the Gilmore case, the Gilmore case, at the least what Congress should have included was an explicit statement that arbitration was prohibited. Instead, in our particular statute, that language is nowhere in the statute. Section 4712 is entirely silent about arbitration. It does not contain any reference whatsoever to either arbitration or more restrictively pre-dispute arbitration agreements. I wanted to talk a little bit about the legislative history of the statute since I'm already going in that direction. It's very important here, the timing of the legislation is important, and what was happening in other parts of the National Defense Authorization Act, the NDAA, is also important. In terms of timing, the Penn Plaza case that Judge Oldham just mentioned, that was decided in 2009. In that case, the Supreme Court held that despite a non-waiver provision in the Age Discrimination and Employment Act, that a provision in a collective bargaining agreement that clearly and unmistakably required union members to arbitrate their age discrimination claims was enforceable. And then in 2010 and 2011, you have the SOX amendments and the Commodity Exchange Act regulation amendments, amended by the Dodd-Frank Act, whereby Congress included or added this specific language that precluding, I'm sorry, allowing, pardon me, Congress added the specific language, no pre-dispute arbitration agreement shall be valid or enforceable. And then in 2012, the National Defense Authorization Act was introduced. Under that version of the statute, the whistleblower claim was extended only to Department of Defense contractors. The Senate then proposed an amendment to the NDAA that added a non-waiver provision, and the non-waiver provision that was proposed is different than the later non-waiver provision that's applicable to the non-Department of Defense contractors. The non-waiver provision at issue was this, whistleblower rights under the provision may not be waived by an arbitration agreement. At the same time, the Senate proposed a new pilot program to expand whistleblower rights to non-Department of Defense contractors. And along with that amendment, the Senate proposed a non-waiver provision that we've already talked about that stated the rights and remedies under this section may not be waived by any agreement, policy form, or condition of employment, including any pre-dispute arbitration agreement, other than an arbitration provision in a collective bargaining agreement. And as I mentioned earlier, this type of non-waiver provision is used frequently in whistleblower statutes. But in enacting Section 4712 in its final form, what the House did was it receded to the additions of the enhanced whistleblower protections. So it essentially agreed to extend these whistleblower protections to non-Department of Defense contractors, but on the condition that that non-waiver provision be revised to exclude the language or to remove the language, including any pre-dispute arbitration agreement and all the text that followed thereafter. Now, at the same time this was happening, and I know this is a lot to sort of juggle in your mind, the non-waiver provision relating to the Department of Defense contractors that I mentioned earlier, that was also revised at the insistence of the House to mirror the current version of the non-waiver provision in Section 4712. So what Congress ended up doing was in both the non-waiver provisions, the one applicable to the Department of Defense contractors and the one applicable to the non-Department of Defense contractors, the language was removed prohibiting waiver of rights by an arbitration agreement. Congress clearly decided against including language that restricted arbitration of claims under the NDAA, both for the Department of Defense contractors and for the non-Department of Defense contractors. This was an issue that was negotiated by Congress. Congress was familiar with this language because it had used this same language in the SOX Act and in the Commodities Exchange Act, and it considered including the language here, but it decided not to. It knew what it was doing and it specifically did not want that language and that pre-dispute arbitration prohibition contained within this section. Now, in my remaining time, I'd like to talk a little bit about the other cases, cases analyzing other statutes. The closest two cases we cited in our brief are the copy credit case involving the Credit Repair Organization Act and then the Gilmore, 14th and Plaza McLeod line of cases that analyze the non-waiver provision in the ADEA. I'd like to start with Gilmore. I think this line of cases, I think it's more important because the ADEA contains not only this non-waiver provision, but it also contains a statement that a claimant is entitled to a right to trial by jury. So it's very similar to Section 4712. The non-waiver language is different, but otherwise it's similar. In Gilmore, the Supreme Court addressed a prior version of the ADEA that did not contain a waiver provision. And there, the claimant issue was an individual's age discrimination claim, whether or not an individual could waive his rights under the ADEA by entering into an arbitration agreement. And so what the court held was in looking at the text and the legislative history, and again, this was before the waiver provision was included, the Supreme Court found that there was nothing in the text or the legislative history that explicitly precluded arbitration of an employee's age discrimination claim. What the court held there is that by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute. It only submits their resolution in an arbitral rather than a judicial forum. In 14th and Plaza, the Supreme Court essentially expanded upon that reasoning, but this time in the context of a provision in the collective bargaining agreement, and I already talked a little bit about 14th and Plaza. I just want to talk a little bit more about what the Supreme Court said in terms of the substantive versus non-substantive rights that might be waived by a non-waiver provision. By this time, the Older Workers Benefit Protection Act was enacted, so we had our current waiver provision in the ADEA. And there, the question was whether a provision in a collective bargaining agreement that clearly and unmistakably required union members to arbitrate their claims under the ADEA was enforceable. The Supreme Court held that it was enforceable. There, the court contrasted the substantive statutory right protected by the non-waiver provision in the ADEA, and that right was identified as the right to be free from with the non-substantive rights not protected by the non-waiver provision. And that was identified, or the specific right that was being argued was a substantive right, and that case was the right to bring an action in a judicial forum. In McLeod, a 2017 Second Circuit case, McLeod essentially expanded 14th and Plaza further to address whether the right to a jury trial or right to proceed in a class action were substantive rights under the statute. In McLeod, the plaintiffs argued that the statute provided them with these specific rights, the right to a jury trial and the right to proceed as a class action, but that their arbitration agreement forced them to forgo those rights in violation of that non-waiver provision. This is very similar to what Robertson argues here. He argues that Section 4712 granted him a right to trial by jury and a right to proceed in a judicial forum, but that our pre-dispute arbitration agreement has forced him to forgo that right in violation of the non-waiver provision in Section 4712. In McLeod, the court held, continuing the reasoning in 14th and Plaza, it held that the non-waiver provision in the ADEA refers narrowly to a substantive waiver of substantive rights under the ADEA, and that the right to a jury trial and the right to proceed as a class action are not substantive rights under that statute. The reason why this case is the Gilmer 14th and Plaza McLeod line of cases is relevant is that you have in the context of a non-waiver provision in the ADEA, although this, we have a different statute and a different non-waiver provision, there the court contrasted between the difference between the substantive rights versus the non-substantive rights, and noted that non-substantive rights included the right to a jury trial, the right to proceed as a class action, and the right to a judicial forum, and that those rights were not, could be waived away by a pre-dispute arbitration agreement or otherwise. Here, what the interdict defendants are essentially asking the court to do is to follow 14th and Plaza and that line of cases and apply the same reasoning to Section 4712. We're asking the court to determine that the substantive right at issue here that the non-waiver provision protects is Robertson's right to be free from retaliation and discrimination in the workplace in the context of a whistleblower claim under Section 4712. We also ask the court to find that the right to a jury trial and the right to a judicial forum are not substantive rights under this section and that they can be waived by a pre-dispute arbitration agreement. Now, in my remaining time, I'd like to talk a little bit about the issue of whether the claims fall within the scope of the arbitration provision at issue. I'd like to first remind the court that the arbitration agreement is very broadly worded, and I'm not going to repeat the language since I know you've been over that, but this court has held that similar clauses that provide for arbitration of any dispute related to, which is similar to our arbitration clause at issue, that these types of clauses have been characterized as extremely broad and capable of expansive reach. According to the Supreme Court's directive in Mitsubishi, and first, I'm not going to go over the terms of the arbitration clause, but I do want to remind the court that in the acknowledgement of the arbitration policy, Robertson did agree to arbitrate any employment-related controversy, dispute, or claim. There's a list of specific claims that might be included, but this is not an all-inclusive list, but that list includes claims for violation of public policy, tort claims, claims for discrimination and or harassment, and claims for violation of any federal law or statute. According to the Supreme Court's directive in Mitsubishi, the court has to look at the allegations of the underlying these claims in the complaint itself rather than focusing on the legal labels attached to these claims. That's according to the Supreme Court's directive in Mitsubishi. If you first focusing on the tortious interference claim, those allegations can be found on pages 16 and 17 of the record, and because my opposing counsel has already gone over them, I don't want to cover them again except to say that with respect to the tortious interference claims, both the claim for prospective relief and the prospective contract and the claim for the existing contract, there's a tort that underlies both of those tortious interference claims, and that's the tort of defamation. Basically, what Robertson claims is that intratech defendants defamed Robertson and his business to these potential employers and potential business partners by very specific statements, specifically calling him unstable, incompetent, and defaming Robertson, his business and abilities. These specific defamatory statements speak to Robertson's professional skills and abilities. They speak to his business and work performance, and they speak to his professional demeanor. The term unstable refers to his demeanor. Incompetent refers to his competency and his work performance. The allegation that the intratech defendants defamed Robertson, his business and abilities, refers to his abilities, his work performance, and his skills as an employee. Then also, if you look at Robertson's allegations relating to the contracts were canceled or not renewed as a result of these defamatory statements, so he's essentially alleging that he's lost a business opportunity. These damages are clearly more professional than personal in nature, and they relate to his ability to make a living. There is a connection between the tortious interference claims and Robertson's employment. Because defamation is the underlying tort here that underlies both of the tortious connected to his employment, because in determining these claims, the fact finder is going to have to determine whether or not these claims are, whether or not these are false, these statements that are being made by the intratech defendants allegedly that whether they were false. Further, truth is a defense to these claims as well. His employment and his employment performance is sort of tied up. All of these issues are tied up together, and these particular claims relate to his employment. We've quoted to several different cases, the Hayes versus HGA Holdings case, the Nolde Brothers case, and the Inside Group case, but there's one case that we didn't, in my very little remaining time here, there's one case that we didn't cite to in our brief, and I'd like to point it out to the court. It's Prudential Securities versus Marshall, and the site is 909 Southwest 2nd, 896. That's a Texas Supreme Court case, so it might not be binding precedent, but we believe the rationale the Texas Supreme Court used and the holding in this case might assist the court. The arbitration clause in that case is also strikingly similar to this case, because it required the employee at issue to arbitrate any dispute, claim, or controversy arising out of their employment or termination of employment, and in that case, in my remaining time, I just want to state that the Texas Supreme Court, the allegation was that Prudential and its employees made defamatory post-termination statements to potential employers, specifically that claimant was fired, that he lost money relating to his professional competence, and that he was a dishonest person. The Texas Supreme Court held that these post-termination defamatory statements as a matter of law, quote, at least touched upon these former employees' performance as brokers, making the claims referable to arbitration. So here, under that same rationale, Robertson's post-termination allegations of defamation, which underlie the tortious interference claim, should also be referred to arbitration, and I'm out of time. Thank you. All right. Thank you, Ms. Dominguez. Mr. Campbell, you have four minutes remaining. Thank you, Your Honor. May it please the Court, I'd like to address just a couple issues briefly. First, appellees have made the argument that there is not an explicit congressional intent to prevent arbitration under the statute. I think that appellees have misread the cases, or the cases do not say precisely what appellees are saying that they do. Congress has never said that Congress or the Supreme Court has never said that it has to use magic words to preclude arbitration. The standard is that Congress itself has to advance an intention to preclude waiver of judicial remedies, and other cases talk about it doing so with clarity. It doesn't have to use the word arbitration specifically, and in fact, the concurrence and copy credit, as my colleague Mr. Walsh said, specifically notes that that is the case, that there's no magic words required. Hasn't the Supreme Court also said that it really matters that Congress didn't mandate that the omission of arbitration or class actions is a probative data point for the fact that Congress didn't need to displace the arbitration act? Well, I think there's two things to point out there. First off, the language of the statute in and of itself as it is clearly encompasses arbitration, because it says that judicial jury trials are a remedy provided for, but those remedies cannot be waived, and a remedy to a jury trial can be waived, and arbitration isn't necessarily going to waive that right. So it's clear on the face of it that that can't be waived. And besides that, there's the legislative history aspect of this. Now, appellees have talked about that and have argued that what the court should infer from the legislative history is that Congress intended to narrow the scope of the non-waivable provision. I think that in actuality, what that shows is an intent to broaden it. It specifically included arbitration with an exception to arbitration. All arbitration except for this particular subcategory of arbitration. And then Congress removed that language, and that should be interpreted to broaden that language rather than narrow it, because it essentially broadens that that would waive a judicial remedy, not just arbitration agreements and not just arbitration agreements except for these specific ones. The appellees talk about a number of comparable statutes that they say are comparable. As Mr. Walsh has already said, the ADEA is distinguishable from this situation because the ADEA specifically includes language. The Congress has made it very, very clear in the ADEA that it was encouraging arbitration. There is no such evidence of congressional intent in this statute. With regard to the other statutes under the CROA, the EPPA, those have very different language, very different non-waivable provisions than in this case. In addition to that, when it comes to the purchase interference claims, first off, appellees say the language is broad. Broad does not mean without limits, and the cases appellees cite indicate that there are limits, that you have to look at the factual allegations of the complaint. Now, appellees have tried to argue that there are defenses that they could bring that would render this related to employment. That's not what the standard is, first off, because the standard is you have to look at the allegations of the complaint. Appellees have not brought any such defenses. Appellees say the truth is a defense. Well, I'm not aware that appellees have actually brought that affirmative defense in this matter. They've denied the allegations, and that is it. Appellees also mention cases such as Nolde. I'll point out when it comes to Nolde, we're not arguing that this arbitration agreement has expired. We're simply arguing that the disputes under this are not finalized. Finally, Nolde involved a situation where the facts and occurrences given rise to the claim occurred before the expiration of that arbitration agreement. I see my time is up, so I'll conclude. Thank you, Mr. Campbell. Thank all of you all for your presentation today and for your briefing leading up to today. The court will go ahead and take the matter under advisement and render a decision in due course. With that, we'll go ahead and conclude our oral presentation today, and we'll resume at 1 30 tomorrow.